**DESERET APARTMENTS, Inc.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

**No. 5668.**

United States Court of Appeals
Tenth Circuit.

Dec. 18, 1957.

Keith E. Taylor, Salt Lake City, Utah
(C. C. Parsons, A. D. Moffat and Calvin
A. Behle, Salt Lake City, Utah, on the
brief), for appellant.

Llewellyn O. Thomas, Asst. U. S. Atty.,
Salt Lake City, Utah (A. Pratt Kesler,
U. S. Atty., Salt Lake City, Utah, on the
brief), for appellee.

Before HUXMAN, MURRAH and
BREITENSTEIN, Circuit Judges.

HUXMAN, Circuit Judge.

The United States, acting for the Federal Housing Commissioner, brought this action against Deseret Apartments, Inc., to foreclose a real estate and chattel mortgage on certain housing units constructed by Deseret at the Deseret Chemical Depot in Utah. The trial court entered a deficiency judgment against Deseret in the sum of $47,409.16, from which judgment this appeal is taken.

The construction of the housing units in question was undertaken after the Secretary of the Army issued a certificate of need for military housing for 26 multifamily structures to be located on or near Deseret Chemical Depot, an Army installation located in a sparsely populated area approximately 20 miles south of Tooele, Utah.

On appeal Deseret challenges the deficiency judgment on the ground that the Government comes into court with unclean hands and that before it is entitled to equity it must do equity. This contention is predicated on the premise that Deseret in constructing the housing units relied upon the statement in the certificate of necessity issued by the Secretary of the Army that " *  *  * the above identified housing project is necessary to provide adequate housing for civilian or military personnel (including government contractors' employees) assigned to duty at the military installation named above; *  *  * ". It is contended that there was in fact not sufficient need for such units to enable Deseret to rent them and thus meet its mortgage payments, and that because of this misrepresentation Deseret was misled to its detriment, and that equity will, therefore, not permit the Government to obtain a deficiency judgment. A secondary contention is that in any event Deseret is entitled to a setoff against the deficiency judgment in the sum of $27,395, an operating loss, which it suffered in operating the apartments.

■ Deseret is not entitled to set off its claim of an operating loss of $27,395. Its claim for this amount is in reality no more than a claim of a credit due Deseret from the United States. The procedure required to establish such a credit is controlled by 28 U.S.C.A. § 2406 which in substance provides that such a claim shall not be allowed unless it is established that it has been disallowed in whole or in part by the General Accounting Office. No claim is made that this statutory requirement has been complied with.

■ We think the facts of this case bring it within the pronouncement of the Supreme Court in Pan-American Petroleum & Transport Co. v. United States, 273 U.S. 456, 506, 47 S.Ct. 416, 424, 71 L.Ed. 734, that "The general principles of equity are applicable in a suit by the United States to secure the cancellation of a conveyance or the rescission of a contract. *  *  * But they will not be applied to frustrate the purpose of its laws or to thwart public policy." and that the Government may not invoke the aid of a court of equity if for any reason its conduct is such that it must be said it comes into court with unclean hands. But unless the Government did something which in good conscience it should not have done, or failed to do something fair dealing required it to do, it comes into court with clean hands and is entitled to the equitable relief it obtained.

■ Appellant's entire case is predicated on the court's finding that the project referred to in the certificate of necessity was not fully justified and in view of subsequent developments it was clear that the facilities then contemplated were not needed. But the court further found that the certificate was issued in good faith. The most that can be said is that the parties erred in their conclusions. The Government did not guarantee to Deseret that the units would be occupied at a rental sufficient to pay the cost of construction. To so hold would be to convert a representation of need into a warranty that such need was present and would continue. It is true that subsequent to the issuance of the certificate the Governmental activities were curtailed, resulting in a further lessening of the demand for

these rental units. But this was not done until 1955, nearly two years after the certificate was issued. The certificate recognizes that activities might be curtailed in the future if required by Government policy. It merely provided that "there is no present intention to substantially curtail the activities at such installation; * * * ".

The certificate of need was only one of the inducements upon which Deseret relied in executing the note and mortgage. Under the court's findings it considered other factors and from a consideration of all of them reached its decision to execute the note and mortgage. The record is devoid of any facts showing bad faith on the part of the Government officials in executing the certificate or facts which would support a conclusion that the Government failed to do anything it should have done, or did something it should not have done. Its officers could only exercise their best judgment in determining whether there was need for the construction of these facilities. The court's finding that they acted in good faith absolves them of all conduct which would sully the Government's hands and prevent it from coming into a court of equity to seek an enforcement of its rights under the notes and mortgages.

It is contended that the court erroneously concluded that it had no power of jurisdiction to consider the equities of the case. The effect of this is to say that the court did not pass upon the issues because of the lack of jurisdiction. We do not think an examination of the entire record sustains this contention. Reliance is had for support of this position upon the statement made by the court in a colloquy between court and counsel in which the court said:

"* * * I may comment, gentlemen, about a matter that I sensed at the trial: I think that there are equitable considerations which would lead the Court to grant relief in this case if I thought I had the power; and I endeavored, in the findings of fact, to disclose those equitable considerations, so that they would be before the reviewing court. It won't disappoint me at all if the reviewing court finds that there is power to grant relief in this case. Because, frankly, I don't see why, under these circumstances, the Federal Housing, or the Secretary of Defense and the housing authorities haven't been a little more considerate, particularly in view of the expressed general policy of Congress."

The words "power" or "jurisdiction" are words of various meanings and are sometimes loosely used to mean that under the facts of the case a party is not entitled to prevail and that, therefore, the court is without power to grant the relief asked for. We think it is clear from the record that the court understood the issues, considered them, and resolved them against appellant. Among the issues for trial formulated at the pretrial hearing were the following:

"7(c) Was the plaintiff or agencies for which it is responsible guilty of such representations or conduct as in equity in the light of all of the circumstances should not estop a litigant in its position from asserting against the defendant the note and mortgages according to their terms.

"8(a) May the plaintiff be estopped as a matter of law from recovering the unpaid balance under said note and mortgages according to their terms?"

Framing these issues for trial would be a nullity if the court was of the view that it was without jurisdiction to consider them.

The record indicates that the court had these issues in mind in making its findings of fact and conclusions of law. Thus, the court found that while at the time of certification of need the project was not fully justified and, in view of subsequent developments it was clear that the contemplated facilities were not needed, yet the certification was made in good faith. It was because of this that

the court concluded as a matter of law that plaintiff was entitled to have the judgment and decree of the court which was entered. In other words, there were no equitable considerations which barred plaintiff from having the relief it sought. The court was of the view that while as a matter of law appellant was entitled to no relief, because of the peculiar facts of the case a benign government should take a less harsh attitude in trying to reach a settlement with Deseret. That is made clear in the court's concluding statement in the colloquy set out above, in which it stated, " * * * I don't see why, under these circumstances, the Federal Housing, or the Secretary of Defense and the housing authorities haven't been a little more considerate, particularly in view of the expressed general policy of Congress."

Affirmed.