**UNITED STATES of America, Plaintiff,**

**v.**

**CITY OF MILWAUKEE et al., Defendants.**

Civ. A. No. 74–C–480.

United States District Court, E. D. Wisconsin.

June 25, 1975.

James S. Angus, Louis G. Ferrand, Jr., and Teresa M. Holland, Attys., Dept. of Justice, Washington, D. C., and William J. Mulligan, U. S. Atty., Milwaukee, Wis., for plaintiff.

James B. Brennan, City Atty., and Maurice L. Markey, Asst. City Atty., Milwaukee, Wis., for defendants.

### DECISION AND ORDER

REYNOLDS, Chief Judge.

On October 17, 1974, the United States of America filed a complaint under the provisions of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq., alleging a pattern and practice of unlawful racial and sexual discrimination on the part of defendant City of Milwaukee in employment of both its police and fire departments. The issues concerning the fire department were resolved by a consent decree entered by the court on October 17, 1974. With respect to the issues concerning the police department, the United States has moved for preliminary injunctive relief.

On April 28, 1975, the defendants filed a motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The defendants have advanced the following grounds for dismissal: (1) the United States is subject to the equitable defense of "unclean hands" because the federal government allegedly discriminated in its employment, (2) the March 1972 amendments to Title VII do not apply to municipal police departments, and (3) Title VII is unconstitutionally vague because of a lack of standards. In their brief in support of the motion, defendants also assert that (1) the City of Milwaukee recruitment activities prior to 1972 are irrelevant except for historical significance, (2) any classification based on race or sex upon which an affirmative action program is premised is constitutionally impermissible, and (3) that plaintiff's motion for injunctive relief is premised upon an erroneous statistical presentation based on the population of the City of Milwaukee. As these matters relate to the propriety of the injunctive relief requested by the United States, they will not be considered at this time but are reserved until a hearing on the merits of plaintiff's motion. Consequently, this action is presently before the court solely on defendants' motion to dismiss which, for the reasons stated herein, is denied.

### I. "Unclean Hands" Defense

Defendants contend that the United States Government has itself discriminated against minority groups in

its employment practices and, consequently, should not be allowed to maintain this equitable action because of its "unclean hands." While the United States may be subject to the general principles of equity, including the "unclean hands" doctrine, *Daniell v. Sherrill,* 48 So.2d 736 (Fla.1950), these principles cannot be applied to "frustrate the purpose of its laws or to thwart public policy." *Pan American Petroleum and Transport Co. v. United States,* 273 U.S. 456, 506, 47 S.Ct. 416, 424, 71 L.Ed. 734 (1927); *Deseret Apartments v. United States,* 250 F.2d 457, 458 (10th Cir. 1957). In *United States v. Philadelphia Electric Co.,* 351 F.Supp. 1394, 1398 (E. D.Pa.1972), a Title VII action, the district court denied an identical motion to dismiss grounded upon the "unclean hands" doctrine, stating:

> "The Government, when applying for relief in a Court of equity is as much bound to do equity as a private litigant. Hardy v. Savannah Apartments, Inc., 217 F.Supp. 649, 661 (S.D. Ga.1963); Daniell v. Sherrill, 48 So. 2d 736, 737 (Fla.). However, the principles of equity will not be applied in a suit by the United States to frustrate the purpose of its laws or to thwart public policy. Pan-American Petroleum and Transport Company v. United States, 273 U.S. 456, 47 S.Ct. 416, 71 L.Ed. 734 (1927); Eichleay Corp. v. National Labor Relations Board, 206 F.2d 799, 806 (3rd Cir. 1953). Even if the instances suggested by the Company of employment discrimination by departments of the United States are possible, or even likely occurrences, a recognition of that by this Court could rise to a level that may justify criticism or official concern but certainly not to a level that could be the basis of a bar for the enforcement of the applicable laws enacted by Congress to alleviate employment discrimination.

> "Therefore, without going into the merits of the Company's allegation of 'unclean hands,' we rule that to apply that doctrine in this case would both frustrate the purpose of Title VII and thwart public policy, and consequently cannot be a bar to the suit."

Reduced to its essential contention, defendants' argument is that if the federal government discriminates against minorities, then the City of Milwaukee should also be allowed to discriminate against minorities. This court is not permitted to allow the strong public interest and congressional policy in this area to be frustrated by such logic and manipulation of "equitable" defenses.

## II. *The 1972 Amendments to Title VII*

The 1972 amendments to the Civil Rights Act of 1964, the Equal Employment Opportunity Act, extended Title VII coverage to state and local governmental employees. Defendants here contend that the March 1972 amendments are not applicable to a municipal police department because the activities of a local police department allegedly do not have a "substantial affect" upon interstate commerce. Consequently, defendants contend that Congress did not intend to include municipal police departments within the scope of Title VII as extended in 1972.

A careful reading of the language of the 1972 amendments and their legislative history reveals that defendants' contention is without merit. First, the 1972 amendments redefined the term "person" to include "any government, governmental agency or political subdivision." Section 701(a), 42 U.S.C. § 2000e(a). Thus, the City of Milwaukee is a "person" within the meaning of Title VII. Second, prior to the 1972 amendments, the term "employer" was defined to specifically exclude states and their political subdivisions. The 1972 amendments removed this specific exclusion and redefined the term "employer" to mean simply "a person engaged in an industry affecting commerce who has fifteen or more employees * * *." Section 701(b), 42 U.S.C. § 2000e(b). Finally, the definition of "industry affecting commerce" was redefined to include

"*any* governmental industry, business or activity." (Emphasis added.) Section 701(h), 42 U.S.C. § 2000e(h). The evident purpose and effect of the revision to § 701(h) was to render governments and their subdivisions "employers" subject to Title VII. As a result of the revision of § 701(h), *any* governmental activity is considered an "industry affecting commerce" for purposes of Title VII by act of Congress. Consequently, all state and local governments are "employers" under Title VII. Nor was Congress without power to enact this expansion of coverage to state and local governments even where the activities of those entities have no "substantial affect" on interstate commerce. While Congress had to draw its power from the commerce clause in order to regulate "private" employers, the enabling clause of the Fourteenth Amendment specifically enables Congress to enforce the Fourteenth Amendment by "appropriate legislation." Therefore, since state and local governmental employers are subject to the Fourteenth Amendment, Congress has the power to regulate these entities by appropriate legislation independent from any affect upon interstate commerce.

■■ The legislative history of the 1972 amendments indicates that Congress established the expansion in coverage on the basis of the Fourteenth Amendment and not the commerce clause. Senator Harrison A. Williams, Jr., Chairman of the Committee on Labor and Public Welfare, stated the following with respect to the constitutional basis of the 1972 amendments, 118 Cong.Rec. § 789:

"Through use of the enabling clause of the 14th amendment, the promise of equal protection can become a reality. The last sentence of the 14th amendment enables Congress to enforce the amendment's guarantees by appropriate legislation.

"The inclusion of state and local government employees within the jurisdiction of Title VII protections will fulfill the congressional duty to enact the 'appropriate legislation: to ensure that all citizens are treated equally in this country.' "

Consequently, the expansion of Title VII coverage to state and local government employment is firmly embodied in the principles of the Fourteenth Amendment. Thus, under the language of the statute and its legislative history, the City of Milwaukee is both a "person" and an "employer" within the meaning of Title VII and therefore is subject to its provisions.

### III. *Vagueness and Due Process Challenge*

■ Finally, defendants contend that this action should be dismissed on the grounds that an alleged "lack of standards" renders Title VII unconstitutionally vague and therefore the statute contravenes the fundamental requirements of due process. Basically, defendants claim that the entire concept of "professional validation" is so vague and indefinite that it provides no standard by which defendants can regulate their conduct.

Section 703(h) of Title VII, 42 U.S.C. § 2000e–2(h), provides in part:

"* * * nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any *professionally developed ability test* provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin. * * *" (Emphasis supplied.)

Defendants contend that the standard laid down of a "professionally developed ability test" consists of mere "professional opinions in the field of psychology" and as such constitutes a denial of due process.

While Title VII itself contains no standards for validation, the Equal Employment Opportunity Commission's *Guidelines on Employee Selection Procedures*, 29 CFR § 1607.1 et seq., do set

out extensive and detailed standards of validation. Although this court recognizes that the Guidelines themselves are very difficult to understand and apply as well as being highly technical, the difficulty and technicality of the Guidelines does not render them so vague as to constitute a denial of due process under the law.

For the reasons stated,

It is therefore ordered that defendants' motion to dismiss this action be and it hereby is denied.