James PINA, Steven Gomes, Albert Braz, David Silva, Joseph Dana DeSilva, Ronald Massey, and Marc Cameron, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

CITY OF EAST PROVIDENCE, Paul Flynn, Mark Haywood, Anthony Almeida, Barry Cook, Edward Doyle, George Lamb, John Unsworth, and Michael Warren, Defendants.

Civ. A. No. 78–0546.

United States District Court, D. Rhode Island.

June 3, 1980.

had an independent source. *See United States v. Crews*, —— U.S. at ——, n. 18, 100 S.Ct. at 1251 n. 18.

Joseph A. Moniz, Day, Berry & Howard, Hartford, Conn., Walter R. Stone, Stone, Clifton & Clifton, Joseph G. LeCount, Providence, R. I., for plaintiffs.

Orlando A. Andreoni, City Sol., Nathaniel J. Rendine, Asst. City Sol., East Providence, R. I., for defendants.

## OPINION

FRANCIS J. BOYLE, District Judge.

This action for injunctive and declaratory relief is based upon the asserted racial discrimination of the City of East Providence, Rhode Island, in the appointment of individuals to the City Fire Department. It is a broad attack brought pursuant to the equal protection and due process clauses of the United States Constitution, 42 U.S.C. § 2000d (1974), 42 U.S.C. § 2000e–2 (1974), and 31 U.S.C. § 1242 (1978). Jurisdiction is

asserted under the provisions of 28 U.S.C. § 1331 (1978), 28 U.S.C. § 1343(3) and (4) (1976), and 42 U.S.C. § 2000e–5(f) (1974).

Plaintiffs contend this Court should certify a class consisting of all black people, defined as Cape Verdians, Afro-Americans, West Indians, and others of African descent: (a) who, during the past six years, have failed the entry level examination given by the City of East Providence for positions in the East Providence Fire Department; (b) who have passed the written and physical examinations for the City's Fire Department, but were not appointed due to the application of the East Providence Personnel Ordinance, § 23–18(c); (c) who have been eliminated from contention for positions in the Fire Department by reason of certain biased elements in the screening procedures of the City of East Providence; and (d) who would be eligible for appointment to positions within the Department, but who are unwilling to apply for such appointments because they believe the appointment procedures are discriminatory and unlawful in nature due to the City's failure to establish a credible recruitment policy among minorities. There are seven individual Plaintiffs. Plaintiffs James Pina, Steven Gomes, Albert Braz, Ronald Massey, and Marc Cameron have passed the entrance examination but were not appointed allegedly because of the operation of the City's Personnel Ordinance, § 23–18(c). Plaintiffs Domingo (David) Silva and Joseph Dana DeSilva did not pass the written examination. The Defendants are the City of East Providence as well as the members of the City Council, the City Manager, the Chief of the Fire Department, and the City's Affirmative Action Officer.

According to the 1970 Census, the City of East Providence had a population of 48,151 residents, 3.5 percent of which was classified as non-white. It is obvious, however, that the number of residents classified as non-white by the 1970 Census was understated. It is also obvious that the non-white population of the City has increased since the 1970 Census, although the precise figures are not known.

In 1973, the Rhode Island Advisory Committee to the United States Commission on Civil Rights reviewed equal employment opportunity within the State government and certain local governments, including the City of East Providence. The Committee was organized under the provisions of 42 U.S.C. § 1975d(c) (1974). Although the study conducted by the Committee was limited, certain problem areas were identified, and the study observed, "Blacks are underrepresented, even at the lower salary levels." *Minorities and Women in Government: Practice Versus Promise*, January, 1975, p. 57. One of the Committee's recommendations was that the City of East Providence should develop an affirmative action plan for the Fire Department as well as other City departments.

Motivated no doubt by the Advisory Committee's Report, the City's Affirmative Action Officer presented an Affirmative Action Plan to the City Council of the City of East Providence on April 5, 1976. The Affirmative Action Plan stated that it was an effort to enhance voluntary compliance with Titles VI and VII of the Civil Rights Act of 1964, and that it was "designed in part to remedy the disparate staffing and recruitment patterns that have negatively affected the employment opportunities of minorities and females with the City of East Providence." Affirmative Action Plan, City of East Providence, Rhode Island, Presented to the City Council—April 5, 1976, p. 2 [hereinafter Affirmative Action Plan]. It further stated that the City of East Providence had developed the Affirmative Action Plan to "create an equitable system and eliminate the effects of the nonprogressive employment practices that have impeded equal opportunity in the Municipal Government of this City." *Id.* at 3. On the whole, a more glowing document could not have been conceived. Nor, as will be developed later, could it have been more completely ignored.

The Affirmative Action Plan provided for numerical goals and set forth time tables "in which the City of East Providence shall make every good faith effort toward

achieving these goals within the context of employment opportunities." *Id.* at 9. As related to the Fire Department, the goals were:

| | |
|---|---|
| As of 1/1/75 | .8% |
| From 1/1/76 until 12/31/76 | .78% to 4. % |
| From 1/1/77 until 12/31/77 | 4. % to 7. % |
| From 1/1/78 until 12/31/78 | 7. % to 10. % |

*Id.* at 10.

On April 5, 1976, the City of East Providence adopted the Affirmative Action Plan in the form of an Ordinance. The Ordinance, Chapter 61, Section I of the City's Ordinances, provided, "There is hereby adopted by the City Council that certain plan entitled 'Affirmative Action Plan, City of East Providence, Rhode Island' which said plan is attached hereto, incorporated herein and made a part hereof." Section II of Chapter 61 provides, "This ordinance shall take effect upon its second passage and all ordinances and parts of ordinances inconsistent herewith are hereby repealed." This Ordinance adopted the Affirmative Action Plan with all the formalities required of an Ordinance, and it was signed by the City Clerk. The second passage occurred on April 19, 1976.

Although the language of the Ordinance is clearly free from any doubt concerning its purpose, there was evidence that at the time of its passage, an effort was made to specifically amend the Personnel Ordinance so that the Affirmative Action Plan would override the Personnel Ordinance and provide a "bypass to get to the protected groups." This effort was unsuccessful. When queried concerning the effect that adopting the Affirmative Action Plan as an Ordinance would have upon the provisions of the Personnel Ordinance, the then City Manager stated that, "we shall cross that bridge when we come to it." There could be no more convincing evidence of racial bias. The later-adopted Affirmative Action Ordinance clearly amends the previous, manifestly inconsistent provisions of the Personnel Ordinance. *See Whyte v. Sullivan*, R.I., 382 A.2d 186 (1978). There can be no question, in this instance, because the Affirmative Action Ordinance, Section II, expressly repealed "all ordinances and parts of ordinances inconsistent herewith . . ." There is no possible construction of these two ordinances which can preserve the Personnel Ordinance's inconsistent provisions. Based upon an opinion by the City Solicitor and consistent with the City's unannounced policy of discrimination, the City has strictly enforced the ranking provisions of the Personnel Ordinance, by giving absolute preference to those with the highest scores on the civil service tests and by entirely ignoring the goals set forth in the Affirmative Action Ordinance. The Defendants' complete adherence to the provisions of the Personnel Ordinance and their obvious lack of enthusiasm for the provisions of the Affirmative Action Ordinance, especially in light of the direct and clear language of the Affirmative Action Ordinance, the indisputable fact that the Affirmative Action Ordinance legally amended inconsistent provisions of the Personnel Ordinance, and the fact that the Affirmative Action Ordinance was adopted twice, clearly indicates an obvious policy and purpose of the City to discriminate.

On October 15, 1977, the City gave a written test to all applicants for firefighter positions. The City and its officials made some positive efforts to secure and encourage minority candidates to apply, and a number did apply. The precise number of minority candidates who took the written examination or passed the written examination is not known, because no record of these numbers was made. There were 464 applicants for the test, of whom it was estimated that fifty-eight, or 12.5 percent, were minorities. 214 applicants passed the written portion of the testing process, and it is estimated that twelve, or 5.6 percent, were minorities. Those who passed the written portion of the testing process were allowed to take a physical agility test, and the results of these tests were weighed fifty percent for the written portion and fifty percent for the physical agility portion of the test. The candidates were then ranked from the highest to the lowest weighted score. The result was a list ranking all 214 candidates, and the highest ranking minori-

ty, who was Ronald Massey, was number sixteen on the list.

At that time, there were nine vacancies in the Fire Department, and in accord with the Personnel Ordinance, § 23–18(c) and past practice, the top eleven ranked names, none of whom were minorities, were certified to the City Manager for appointment. The City Manager was then to select the nine to be hired by the City as firefighters. The Fire Department's authorized strength is 135, and there are presently twenty to twenty-two unfilled positions. There is presently only one minority, who was appointed in 1972, within the 115 member Department.

The thrust of the Plaintiffs' claim is that the ranking and certification system used in accord with the provisions of the Personnel Ordinance, §§ 23–17(a) and 23–18(c), which gives equal weight to the written and physical agility portions of the examination, resulted in a disparate impact upon minorities constituting unlawful discrimination, and that the City's use of the ranking and certification system of the Personnel Ordinance and failure to implement the Affirmative Action Ordinance resulted in disparate treatment of minorities constituting unlawful discrimination.[1] Plaintiffs are clearly correct. Although Plaintiffs do not concede the validity of the written examination, they have not pressed its invalidity in this action. It is only the combination of the two tests and the resulting ranking system that is contested in connection with the Plaintiffs' claim of employment discrimination.

Based upon these claims, Plaintiffs contend that Defendants have violated the due process and equal protection clauses of the United States Constitution, 42 U.S.C. § 1981 (1974), 42 U.S.C. § 1983 (1978), 42 U.S.C. § 2000d (1974), 42 U.S.C. § 2000e–2 (1974),

and 31 U.S.C. § 1242 (1978). Each of these violations will not, however, be discussed in this Opinion. The discussion in the decision will be confined to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, because that statute is determinative of the issues.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), provides:

> It shall be an unlawful employment practice for an employer—to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin

> . . .

Title VII applies to municipal governments as well as private employers, see 42 U.S.C. § 2000e(a) and (b), Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); United States v. City of Milwaukee, 395 F.Supp. 725 (D.C.Wis.1975), and municipal governments are "industr[ies] affecting interstate commerce." 42 U.S.C. § 2000e(h) (1974). Job applicants are protected by Title VII through the ban on discriminatory hiring practices by an employer. See Dothard v. Rawlinson, supra; 42 U.S.C. § 2000e–2(a)(1). The individual Plaintiffs in this action are all applicants for positions as firefighters with a municipal employer and are therefore protected by Title VII. Furthermore, Plaintiffs have exhausted their administrative remedies under Title VII by obtaining Right to Sue letters from the Equal Employment Opportunity Commission.

Under Title VII of the Civil Rights Act of 1964, unlawful discrimination may be based upon either a claim of disparate impact or a claim of disparate treatment. In the present action, Plaintiffs have claimed De-

---

1. Because Plaintiffs have limited their claim to discrimination by use of the ranking and certification system, only those Plaintiffs who have passed the examination, were ranked, and were not certified have stated a claim upon which relief may be granted. The Plaintiffs who did not pass the examination and were not ranked, David Silva and Joseph DeSilva, could not have

been discriminated against by the ranking system, and must be dismissed from this action. Hereinafter, Plaintiffs are only those named Plaintiffs who passed the examination and were ranked, i. e. James Pina, Steven Gomes, Albert Braz, Ronald Massey and Marc Cameron.

fendants' hiring practices constitute both disparate impact and disparate treatment, although only one theory need be proved in order for Plaintiffs to recover. In *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), a disparate treatment case, the Supreme Court defined disparate treatment and disparate impact. In that case the Court stated:

"Disparate treatment" such as is alleged in the present case is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. See, e. g., *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265–266, 97 S.Ct. 555, 563–565, 50 L.Ed.2d 450. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII. [Citations Omitted].

Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. See infra, [431 U.S.] at 349, [97 S.Ct. at 1843, 1861, 52 L.Ed.2d 423]. Proof of discriminatory motive, we have held, is not required under a disparate-impact theory. Compare, e. g., *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–432, 91 S.Ct. 849, 853–854, 28 L.Ed.2d 158, with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–806, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668.

*Teamsters v. United States, supra,* 431 U.S. at 335, 97 S.Ct. at 1854.

■ Plaintiffs first claim that the ranking system used by the City of East Providence had a disparate impact upon blacks who applied for firefighter positions. In order for the Plaintiffs to show a *prima facie* case of discrimination under a disparate impact theory, Plaintiffs need only show that facially neutral employment practices fall more harshly upon one group than another. *Teamsters v. United States, supra. Griggs v. Duke Power Co., supra,* made it clear that the Civil Rights Act of 1964 "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co., supra,* 401 U.S. at 431, 91 S.Ct. at 853. Thus, the Act is directed at "the *consequences* of employment practices, not simply the motivation." *Id.* at 432, 91 S.Ct. at 854. A *prima facie* case of discrimination may therefore be established under a disparate impact theory even in the absence of proof of discriminatory motive or intent. *See also, Dothard v. Rawlinson, supra.*

Once the plaintiff has established a *prima facie* case of disparate impact, the employer must then meet the burden of establishing "that any given requirement . . . [has] a manifest relationship to the employment in question." *Griggs v. Duke Power Co., supra,* 401 U.S. at 432, 91 S.Ct. at 854. Furthermore, if the employer meets this burden, the plaintiff may still establish a Title VII violation by showing that " ' " 'other selection devices without a similar discriminatory effect would also "serve the employer's legitimate interest in 'efficient and trustworthy workmanship.' " ' " ' " *Dothard v. Rawlinson, supra,* 433 U.S. at 329, 97 S.Ct. at 2727, *quoting Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1974), *quoting McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 801, 93 S.Ct. at 1823.

■ In the present case, Plaintiffs have shown that in 1970 at least 3.5% of population of the City of East Providence was non-white, and it is probable that there was a significantly greater non-white population at the time. Although pre-Act disparate impact cannot form the basis for a *prima facie* case of a Title VII violation, "Proof that an employer engaged in racial discrimination prior to the effective date of Title VII might in some instances support the inference that such discrimination continued . . . ." *Hazelwood School District*

*v. United States*, 433 U.S. 299, 309–310, 97 S.Ct. 2736, 2742, 53 L.Ed.2d 768 (1977). Thus, the 1970 figures are relevant. Plaintiffs have also shown that since the 1970 Census, the non-white population has grown, although the exact figures are not available. The imprecise nature of these figures is not particularly significant when compared with the almost complete absence of minority employees with the City.

Plaintiffs allege that the ranking system used by the City pursuant to the Personnel Ordinance, §§ 23–17(a) and 23–18(c), based upon equal weight attributed to the written and physical agility portions of the firefighter's examination, results in a disparate impact upon minorities. Twelve percent of the applicants who took the written examination were minorities. However, after ranking, the highest ranking minorities were number sixteen and number twenty-five, the only minorities to appear in the "superior" class of applicants.[2] Seven of the twelve ranked minorities were ranked 170 or below. Thus, the ranking of applicants who took and passed the firefighter's examination did have a disparate impact upon blacks when compared either with the percentage of minorities in the general population, the percentage of minorities who took the examination, or the percentage of minorities who passed the examinations. Indeed, the fact that none of the eleven names certified to the City Manager for hiring was a minority and the fact that there has been only one minority firefighter appointed under the ranking system to the 115 member Department are further evidence of the disparate impact of the ranking system.

■ It should be noted that percentage comparisons may be used to establish a *prima facie* case of disparate impact, so long as the comparison is with the relevant labor market. *Hazelwood School District v. United States, supra; Teamsters v. United States, supra.* In the present case, the comparison between the percentage of ranked minorities and the percentage of minorities in the general population is proper, because the skill involved, firefighting, is one that the general population may possess. *Hazelwood School District v. United States, supra; Teamsters v. United States, supra; Boston Chapter, N.A.A.C.P., Inc. v. Beecher*, 504 F.2d 1017 (1st Cir. 1974).

Defendants presented evidence concerning the validity of both the written and physical examinations used by the City. However, the Defendants did not offer any evidence in rebuttal of the Plaintiffs' claim that the ranking system had a disparate impact on minorities. The City did not offer any evidence of the business necessity of the ranking, nor that the ranking system had any relationship to performance as a firefighter. Courts have held that ranking systems may form the basis for a disparate impact claim. *See Louisville Black Police Officers Org. v. Louisville*, 21 E.P.D. 30,330 (W.D.Ky.1979). Indeed, the evidence in this case shows that the ranking system used by the Defendants does not rank the applicants in accordance with their ability as firefighters, because the equal weighting system used to rank applicants gives too much weight to the written examination on which minority applicants score disproportionately lower, and too little weight to the physical examination, which appears to have a greater relationship to job performance as a firefighter. Any applicant who passes the test is a qualified firefighter, but the ranking does not mean that the highest ranked applicant will be the best firefighter. At best, the ranking is useful to determine which applicants may be "superior" firefighters and which applicants may only be "qualified" firefighters. There is no evidence which even remotely suggests that the order of ranking establishes that any applicant is better qualified than any other applicant, who qualified, within a wide range of positions. The science of testing is by no means so accurate. *See* note 2, *supra.*

---

**2.** Plaintiffs' expert, Dr. Felix M. Lopez, testified that the ranking system, which combined physical and written examination, was only useful to differentiate between "superior" and "qualified" firefighters. All applicants ranked are "qualified," while the top ranked fifty-two persons could be considered "superior."

Thus, the Defendants have not shown that the ranking system has a manifest relationship to firefighting, nor have they shown that the ranking system is related to job performance. The Defendants have not rebutted Plaintiffs' *prima facie* case of disparate impact.

The Plaintiffs next claim that the Defendants' use of the ranking and certification system and failure to implement the Affirmative Action Ordinance constitute disparate treatment of minorities in violation of Title VII. As previously noted, a claim of disparate treatment under Title VII requires proof of discriminatory motive, although this motive may be inferred from the particular facts. *Teamsters v. United States, supra.* A plaintiff in a Title VII action must establish a *prima facie* claim of racial discrimination by showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. The employer may then rebut a plaintiff's *prima facie* case merely by "proving that he based his employment decision on a legitimate consideration, and not an illegitimate one such as race . . . Title VII prohibits him from having as a goal a work force selected by any proscribed discriminatory practice, but it does not impose a duty to adopt a hiring procedure that maximizes hiring of minority employees . . . [and] the employer need only 'articulate some legitimate, nondiscriminatory reason for the employees rejection.' " *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577–578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978), *quoting McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. The Plaintiff is then allowed "to introduce evidence that the proffered justification is merely a pretext for discrimination." *Id.* 438 U.S. at 578, 98 S.Ct. at 2950.

Plaintiffs have met the four criteria set forth in *McDonnell Douglas Corp. v. Green, supra,* which are necessary to establish a *prima facie* case of disparate treatment. Plaintiffs have shown that they are members of a racial minority; that they applied for positions as firefighters with the City of East Providence; that they were qualified to be firefighters because they passed the examinations given by the City for the firefighter positions; that, despite their qualifications, they were not certified to be hired; and that after their rejection the positions remained open. There is also more direct evidence of discriminatory conduct by the Defendants. The Rhode Island Advisory Committee Report shows that minorities are underrepresented at all levels of employment within the City, and although it is not suggested that such efforts are required, it seems that the City has made no efforts to remedy this underrepresentation.[3] Furthermore, the language used in the City's Affirmative Action Ordinance is some evidence of disparate treatment. The Affirmative Action Plan, adopted by the City as an ordinance, states, "The procedures outlined herein are designed in part to remedy the disparate staffing and recruitment patterns that have negatively affected the employment opportunities of minorities and females with the City of East Providence." Affirmative Action Plan, *supra,* at 2. It is also evident that the City Solicitor and the City Personnel Director have advocated strict compliance with the ranking and certification system of the Personnel Ordinance and have completely ignored the Affirmative Action Ordinance, supported only by an opinion of the City Solicitor. This Court finds these actions are evidence of a policy of discrimination due to racial bias. It is manifest that the Affirmative Action Plan amended the Personnel Ordinance. If the City were allowed to hire those certified under the Personnel Ordinance, the number of minorities in the Fire

---

**3.** Several of the public officials who testified seemed to consider it their duty only to seek out minorities to take the test rather than their duty to actually employ minorities.

Department would drop from one out of 115, or 0.87%, to one out of 124, or 0.81%. These numbers are contrary to the letter and spirit of the Affirmative Action Ordinance. Thus, Plaintiffs have established a *prima facie* case of disparate treatment both through the four criteria enunciated in *McDonnell Douglas Corp. v. Green, supra,* and through a showing of intentional conduct from which discriminatory motive may be inferred.

Again, it is encumbent upon Defendants to rebut Plaintiffs' *prima facie* case of disparate treatment by showing some legitimate reason for use of the ranking and certification system of the Personnel Ordinance and their failure to enforce the Affirmative Action Ordinance. However, as was previously discussed, Defendants have not shown any legitimate reason for ranking the qualified applicants by giving equal weight to the written and physical portions of the examination and certifying the top eleven names for appointment. Indeed, even the Defendants' rebuttal evidence is more consistent with the hypothesis that all who pass the examination are qualified for the positions, and at best, ranking serves to distinguish between superior and qualified applicants. Again, it must be pointed out that there is no evidence that the result of ranking was to predict the best firefighter and those who would not be quite as good. There is no test of human ability which is so precise that it can determine, exactly in order from 1 to 214, which individuals should be placed in line exactly ahead of or behind any other applicant. The inhabitants of the City are entitled to the services of qualified firefighters. The simple fact is that the testing results do not make a sufficiently accurate prediction of who is the best firefighter such that it can be said the first eleven on the certification list are the best firefighters. Based on these facts, Defendants have failed to show a legitimate, nondiscriminatory reason for ranking applicants by equally weighing their examination results and then certifying the first eleven names on the list. Defendants have therefore failed to rebut Plaintiffs' *prima facie* showing of disparate treatment in violation of the Civil Rights Act of 1964.

The purpose of Title VII is to "achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees," *Griggs v. Duke Power Co., supra,* 401 U.S. at 429–430, 91 S.Ct. at 853, and "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody, supra,* 422 U.S. at 418, 95 S.Ct. at 2372. Pursuant to these purposes, Congress gave the courts broad powers to remedy employment discrimination in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–5(g) states:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate.

Because Defendants have violated Title VII, the Court must fashion a remedy for the Plaintiffs.

◼ Plaintiffs have moved pursuant to Rule 23 of the Federal Rules of Civil Procedure to maintain this action as a class action. Plaintiffs assert that this action should be certified as a class action with the class consisting of all a black people, defined as Cape Verdians, Afro-Americans, West Indians, and others of African descent: (a) who, during the past six years have failed the entry level examination given by the City of East Providence for positions in the East Providence Fire Department; (b) who have passed the written and physical examinations for the City's Fire Department, but were not appointed due to the application of the East Providence Personnel Ordinance; (c) who have been eliminated from contention for positions in the Fire Department by reason of certain bi-

ased elements in the screening procedures of the City of East Providence; and (d) who would be eligible for appointment to positions within the Department, but who are unwilling to apply for such appointments because they believe the appointment procedures are discriminatory and unlawful in nature due to the City's failure to establish a credible recruitment policy among minorities. Rule 23(a) of the Federal Rules of Civil Procedure imposes four requirements in order to certify a class. These requirements are that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Federal Rules of Civil Procedure, Rule 23(a). In addition, one of the requirements of subsection (b) of Rule 23 must be met. The party seeking to have the class certified, in this case the Plaintiffs, has the burden of proving the requirements of Rule 23 have been met. *Senter v. General Motors Corp.*, 532 F.2d 714 (6th Cir. 1977); *Lamphere v. Brown University,* 71 F.R.D. 641 (D.R.I.1976), *appeal dismissed*, 553 F.2d 714 (1st Cir. 1977).

In the present case, the individual Plaintiffs have proven that the Defendants' use of the ranking and certification system constituted unlawful employment discrimination in violation of Title VII. Before a minority applicant can be adversely affected by the discriminatory ranking and certification system, the applicant must first have taken the firefighter's examination, the validity of which is neither conceded nor challenged by this action. Therefore, a minority applicant must have taken the firefighter's examination in order to have been discriminated against by the Defendants' use of the ranking and certification system. Because all minority applicants who took the examination or who took and passed the examination and were accordingly ranked are identifiable, the class is neither numerous nor is joinder of all members impracticable. *Ward v. Kelly*, 476 F.2d 963

(5th Cir. 1973). Although the requirements of Rule 23 may be liberally applied in Title VII cases, *see, e. g., Lamphere v. Brown University, supra*, Plaintiffs have not met the requirement of Rule 23(a)(1) in this case. Plaintiffs' motion for certification of this action as a class action is therefore denied.

In accord with the broad powers to furnish equitable, affirmative relief afforded to this Court by 42 U.S.C. § 2000e–5(g) where Plaintiffs have proven a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, this Court orders the Defendants to prepare and present to this Court, within sixty days, for approval, a plan for the implementation of the Ordinance entitled "AN ORDINANCE ADOPTING AN AFFIRMATIVE ACTION PLAN FOR THE CITY OF EAST PROVIDENCE, RHODE ISLAND," Chapter 61 of the Ordinances of the City of East Providence, as it applies to appointment of candidates to the Fire Department of the City of East Providence. Plaintiffs may prepare and present a form of Judgment with costs to Plaintiffs.

SO ORDERED.